**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| DARNELL EUBANKS | : |
|           Plaintiff | : |
| v. | : |
| | :   Civil Action No. _____ |
| DREXEL UNIVERSITY | : |
|           Defendant | : |

---

## **CIVIL COMPLAINT**

Plaintiff, Darnell Eubanks, brings this action, for relief from discrimination, retaliation, and harassment experienced while employed by Defendant, Drexel University, on the basis of race, disability, and/or having taken a leave of absence. Plaintiff brings these allegations under the Family and Medical Leave Act, 29 U.S.C.A. §2601, *et. seq.*("FMLA"), Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq.*("Title VII"), Americans with Disabilities Act, 42 U.S.C.A. §12101 *et. seq.* ("ADA"), as amended by the Americans with Disabilities Amendment Act of 2008 ("ADAA"), and the Pennsylvania Human Relations Act, 43 P.S. §§951-963 ("PHRA"). Plaintiff further alleges retaliation in violation of public policy for Plaintiff having made a claim under the Workers Compensation Act, pursuant to the Pennsylvania Supreme Court decision *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998). Plaintiff alleges and avers as follows:

**Parties**

1.  Plaintiff, Darnell Eubanks, is an adult male African American / black individual who resides at 6056 Lawndale Avenue, Philadelphia, PA 19111 and at all times relevant was employed by Drexel University.

2.  Defendant, Drexel University, is a non-profit organization duly existing under the laws of the Commonwealth of Pennsylvania and doing business affecting interstate commerce with a registered office and place of business at 3141 Chestnut Street, Philadelphia, PA 19104; and at all times relevant, was the employer of Plaintiff.

3.  Defendant Drexel University agreed, accepted, adopted, acquiesced, and/or otherwise is bound by the actions, omissions, and/or conduct of its officers, managers, supervisors, employees, and agents including, but not limited to Thomas Hirsch and Sharukh Nayar.

**Jurisdiction and Venue**

4.  Subject matter jurisdiction is appropriate before this Court under Federal Question Jurisdiction, 28 U.S.C. §1331, and the state law claims are also appropriately before this Court under Supplemental Jurisdiction, 28 U.S.C. §1367.

5.  Personal Jurisdiction and Venue are appropriate before this Court as Defendant resides and/or reasonably avails itself of the Commonwealth of Pennsylvania, and all actions giving rise to this litigation occurred in the Eastern District of Pennsylvania. (i.e. Berks, Bucks, Chester, Delaware, Lancaster, Lehigh, Montgomery, Northampton, and Philadelphia Counties).

6.  Plaintiff has completed all pre-requisites to bringing his claims of employment discrimination by having filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the Pennsylvania Human Relations Commission ("PHRC"), and the Plaintiff having received a Notice of Right to Sue.

**Summary of Facts**

7. Plaintiff began employment for Defendant on or about September 30, 2019 working in the Facilities Management Department and operating as a driver.

8. Plaintiff worked primarily Monday through Friday, 3:45 P.M. to 11:45 P.M., and earned between $21.00 and $22.00 an hour, when adding the second shift differential.

9. Plaintiff reported to supervisor Thomas Hirsch (Caucasian male) and Facilities Manager, Sharukh Nayar (non-African American/non-black).

10. Mr. Hirsch and Mr. Nayar placed an unusual amount of negative and discriminatory criticism, scrutiny, and discipline on Plaintiff due to his race and color.

11. Mr. Hirsch and Mr. Nayar had issued discipline and unusually strict discipline on the African American workers under their supervision, including Plaintiff.

12. Plaintiff verbally complained of discriminatory treatment but never made a formal complaint through Human Resources or his Union.

13. In 2021 Plaintiff was tasked with driving the "Powelton Route" from 6:45 P.M. to 10:30 P.M. because the then driver, Jewel (Last Name Unknown)(African American female), was relieved from the duty by Mr. Hirsch and Mr. Nayar due to a family tragedy near the route.

14. The Powelton Route requires the driver to shuttle students in a loop from 33rd and Market Street to 43rd and Powelton Avenue (Vidas Athletic Complex).

15. The driver seat and area in the shuttle for the Powelton Avenue route is small and cramped and placed strain on Plaintiff right foot and ankle, which Plaintiff had previously injured.

16. Plaintiff complained to Mr. Hirsch and Mr. Nayar about the strain and pain on his foot and ankle while driving the Powelton Route, but there was nothing done in relief.

17. On or about January 31, 2022, Plaintiff's biological mother, Denise Eubanks, underwent surgery and Plaintiff had to care for her during and after the surgery.

18. Plaintiff applied and was approved for Intermittent Family and Medical Leave Act ("FMLA") from January 31, 2022 through April 30, 2022, to care for his mother.

19. During this time, and on February 17, 2022, the continual strain on Plaintiff's right foot and ankle manifested into an injury for which Plaintiff further complained to his supervisors and thereafter sought a claim for Workers' Compensation benefits.

20. Defendant's Mr. Hirsch and Mr. Nayar were dismissive of Plaintiff's injury and Plaintiff worried for his job.

21. Plaintiff was setup and required to treat with Defendant's panel physicians, WorkNet Occupational Medicine-South Philadelphia, and on March 8, 2023 WorkNet issued Plaintiff work restrictions.

22. WorkNet restricted Plaintiff from using foot controls, restricted Plaintiff from commercial driving, restricted Plaintiff from operating machinery, and restricted Plaintiff from any repetitive flexion of right foot or ankle.

23. Mr. Hirsch and Mr. Nayar claimed there were no positions available to Plaintiff with these work restrictions, despite Plaintiff believing there were positions available.

24. Plaintiff had to make a claim for continuous FMLA related to his own serious health condition, which was his right foot and ankle (Leave I.D. and disability claim #12531475).

25. Plaintiff called-in and utilized FMLA while being out of work and unable to work due to his work-related injury.

26. As of March 18, 2022, Plaintiff had still not been returned to full duty by WorkNet.

27. Plaintiff's continuous FMLA for his right foot and ankle expired but he continued to have FMLA for his mother.

28. Plaintiff called out of work due to (i) having not being returned to work via WorkNet, and (ii) as part of the Intermittent FMLA for caring for his mother.

29. A meeting was called by Mr. Hirsch and Mr. Nayar on March 23, 2022 for Plaintiff to appear at Building 16 of Defendant's facilities.

30. At the meeting, Defendant Nayar questioned Plaintiff with regard to his work-related injury, his FMLA leave, and accused Plaintiff of being a no-call and no-show for March 18th, March 21st and March 22nd, before having suspended Plaintiff.

31. Plaintiff informed his supervisors that he had used sick time and that his injury and FMLA were credible and valid for the days he had not worked.

32. Mr. Nayar demanded that Plaintiff hand over his keys and I.D., which were a clear indication that Defendant was terminating Plaintiff.

33. Plaintiff complained of discrimination and unfair treatment under his supervisors, and gave examples including Jewel (LNU) who was accommodated from the Powelton Route, and Lee Sung an Asian American that had a work-related injury and was given a light duty position, while Plaintiff was not offered light duty or accommodated work.

34. After the meeting, Drexel Police approached Plaintiff to inform that Mr. Hirsch and/or Mr. Nayar wanted them to remove Plaintiff from the premises.

35. On April 11, 2022, Defendant formally terminated Plaintiff.

36. It is alleged and believed that upon realizing Plaintiff had FMLA and called-out of work for the days he was accused of having been a no-call / no-show; the Defendant made-up a story of Plaintiff acting insubordinate at the meeting, to support termination.

37. Defendant's reasoning for its actions is/are pretext to discrimination and retaliation.

38. Plaintiff was discriminated against, harassed, mistreated, and retaliated against on account of his protected classes, his leave, and his pursuit of Workers Compensation benefits.

39. Defendant disciplined, suspended, and terminated Plaintiff immediately after and during his approved FMLA leave and amid his first and only claim for Workers' Compensation benefits, which was all designed to deprive Plaintiff of his legal rights.

40. On information and belief, Defendant replaced Plaintiff and/or distributed his work duties to persons outside Plaintiff's protected classes and persons that had not similarly been approved for FMLA and/or suffered a work-related injury.

41. Plaintiff returned to work as a driver for Newman and Company around April 11, 2022, earning about $23.00 an hour, and then worked as a driver for TRG Mid-Atlantic / The Royal Group, beginning July 17, 2023, and earning $25.00 an hour.

### COUNT ONE
**Retaliation**
*Family Medical Leave Act "FMLA", 29 USCA § 2601 et. seq.*
**Plaintiff v. Defendant**

42. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

43. Defendant is an entity required to provide leave of absence under the Family and Medical Leave Act ("FMLA") to eligible and qualifying individuals as it has more than 50 employees working more than 20 calendar weeks per year.

44. Plaintiff was an eligible individual to take FMLA leave as he had the requisite twelve (12) months of employment with Defendant and had worked 1250 hours in the preceding twelve months of employment to his request for leave.

45. Plaintiff gave proper notice for his need for leave for both his request for intermittent FMLA to care for his biological mother, and for his request for continuous FMLA related to his own serious health condition, his right foot and ankle condition.

46. Plaintiff was approved for this Intermittent FMLA from January 31, 2022 through April 30, 2022.

47. Plaintiff was approved for continuous FMLA from February 17, 2022 through March 17, 2022 related to his right foot and ankle condition.

48. Defendant's FMLA was administered by a third-party, Lincoln Financial Group.

49. Defendant, by and through Mr. Hirsch and Mr. Nayar, violated Plaintiff's rights under the FMLA by having disciplined, suspended, and terminated Plaintiff contemporaneous with- and/or after Plaintiff's approval for FMLA leave.

50. Defendant placed Plaintiff on indefinite suspension on March 23, 2022 and terminated effective April 11, 2022, as a direct result of Plaintiff's approval and leave of absence under the FMLA.

51. Defendant retaliated against Plaintiff in violation of the FMLA as (1) Plaintiff took and/or was approved for FMLA leave, (2) Plaintiff suffered adverse employment decision(s) and actions in the discipline, suspension, and termination, and (3) the adverse decisions and actions was/were casually related to his leave via temporal proximity and/or other antagonism, animus, and proof of causal connection.

52. The temporal proximity of Plaintiff's return to work from FMLA and the disparate treatment, adverse action, and/or termination are unusually suggestive to raise a presumption that the discipline and/or termination was/were causally related to the leave.

53. Defendant's conduct of antagonism and/or animus supports and raises an inference that Plaintiff's disparate treatment and/or termination was/were causally related to his protected activity / leave of absence.

54. The acts mentioned above were willful, wanton, malicious, reckless, oppressive, and justify the award of liquidated damages.

55. As a direct and proximate result of Defendant's discrimination and wrongful termination of Plaintiff, Plaintiff has been deprived of economic benefits including, but not limited to, loss of wages, loss of back pay, loss of front pay, medical bills, and out-of-pocket expenses.

56. Plaintiff demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorney's fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

57. In terminating Plaintiff, Defendant considered his leave of absence under the FMLA and thus under mixed-motive, Plaintiff is entitled to attorney's fees.

WHEREFORE, Plaintiff, Darnell Eubanks, demands judgment, against Defendant, Drexel University, for compensatory damages, equitable relief, liquidated damages, costs of litigation, and all other relief the Court deems equitable and just.

## COUNT TWO
### Harassment, Discrimination, and Disparate Treatment – Race and Color
*Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.*
**Plaintiff v. Defendant**

58. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

59. Defendant is an employer under 42 U.S.C. § 2000 *et. seq* as it is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks, in the current or preceding calendar year.

60. Plaintiff is a person and has a protected class in that he is African American / black.

61. Under 42 U.S.C. § 2000e-2. [Section 703](a) it shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, [or] color, …."

62. Defendant by and through Plaintiff's supervisors, Mr. Hirsch and Mr. Nayar, harassed, discriminated against, and disparately treated Plaintiff to his detriment and disparately to/as those outside his protected classes, as follows:

    a. Subjecting Plaintiff to undue scrutiny;

    b. Subjecting Plaintiff to unnecessary discipline;

    c. Suspending Plaintiff;

    d. Firing Plaintiff;

    e. Replacing Plaintiff with persons outside his protected class; and,

    f. Other adverse employment actions and treatment denied Plaintiff but permitted to similarly situated individuals outside Plaintiff's protected class.

63. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages, humiliation, embarrassment, loss of reputation, and other similar harms, all to Plaintiff's great detriment.

64. Defendant's actions were willful and wanton and thus require the imposition of Punitive Damages.

65. Alternatively, as Defendant considered Plaintiff's race and/or color in the foregoing discrimination, Plaintiff is entitled to a charge for mixed-motive discrimination, which entitles Plaintiff to an award of Attorney's fees.

WHEREFORE, Plaintiff, Darnell Eubanks, demands all relief from Defendant, Drexel University, recoverable under law and as deemed reasonable and just by the Court.

## COUNT THREE
### Discrimination and Disparate Treatment – Wrongful Termination
*Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 et. seq.*
### Plaintiff v. Defendant

66. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

67. Defendant is an employer under the ADA as it is engaged in an industry affecting commerce and has/had a sufficient number of employees working each of twenty or more calendar weeks in the current or preceding calendar year.

68. Plaintiff is an individual with a qualified disability as his foot and ankle condition prevent him from performing everyday activities, but do not prevent him from performing the essential functions of his job, with or without a reasonable accommodation.

69. Defendant disparately treated and thus discriminated against Plaintiff when unnecessarily disciplining him in relation to similarly situated employees, without disabilities.

70. Defendant failed to offer a reasonable accommodation when one was present and did not create a hardship.

71. Defendant did not engage in the interactive process and try to discern a reasonable accommodation to return Plaintiff to work.

72. Defendant did not consider further leaves of absence to account for any alleged and claimed absences.

73. In sum, Defendant disciplined and reprimanded Plaintiff for his failure to work due to his disability, denied him light duty positions that were available and did not cause or create a hardship for Defendant, and suspended and terminated Plaintiff for his alleged failure to appear for work on days when his disability prevented his appearance and should have been covered by a reasonable accommodation and/or leave of absence.

74. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

75. Defendant's actions were willful and wanton and thus require the imposition of Punitive Damages.

76. Alternatively, Defendant's actions were motivated by the foregoing discrimination and thus Plaintiff is entitled to attorney's fees under the mixed motive theory of liability.

WHEREFORE, Plaintiff, Darnell Eubanks, hereby demands judgment in his favor and against Defendant, Drexel University, for any and all damages deemed necessary and just by the Court.

## COUNT FOUR
### Retaliation
*Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 et. seq.*
### Plaintiff v. Defendant

77. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

78. Plaintiff's leave of absence and/or application for disability benefits constitutes a reasonable accommodation and/or protected activity.

79. Defendant retaliated against Plaintiff by having disciplined, suspended, and/or terminated him for having taken a leave of absence and/or taken protected activity.

80. Defendant's adverse action is/was temporally proximate to Plaintiff's leave and/or protected activity, such that it is/was unusually suggestive that Defendant retaliated against Plaintiff for having taken the protected activity.

81. Alternatively, sufficient evidence of antagonistic and/or animus toward Plaintiff and/or other evidence of a causal connection between the protected activity and adverse action support that Defendant's actions were retaliation.

82. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

83. Defendant's actions were willful and wanton and thus require the imposition of Punitive Damages.

84. Alternatively, Defendant's actions were motivated by the foregoing discrimination and thus Plaintiff is entitled to attorney's fees under the mixed motive theory of liability.

WHEREFORE, Plaintiff, Darnell Eubanks, hereby demands judgment in his favor and against Defendant, Drexel University, for any and all damages deemed necessary and just by the Court.

## COUNT FIVE
### Race/Color and Disability Discrimination and Retaliation
*Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§951-963*
### Plaintiff v. Defendant

85. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

86. Defendant is an employer under 43 P.S. §951 *et. seq.* as it employs the requisite number of individuals (four) within the Commonwealth of Pennsylvania to be subject to the Pennsylvania Human Relations Act ("PHRA").

87. Plaintiff is an employee under the PHRA as he is employed by an employer.

88. Plaintiff has protected classes in his race, color, and his disability.

89. Defendant discriminated against and disparately treated Plaintiff on the basis of race, color, and/or disability as alleged *Supra* and thus violated the PHRA.

90. Defendant retaliated against Plaintiff on the basis of disability as alleged *Supra* and thus violated the PHRA.

91. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has loss of wages, loss of back pay, loss of front pay, out-of-pocket expenses, pain, suffering, mental anguish, loss of reputation, and other damages.

92. Plaintiff seeks attorney's fees and costs.

93. Alternatively, Defendant's actions were motivated by the foregoing discrimination and thus Plaintiff is entitled to attorney's fees under the mixed motive theory of liability.

WHEREFORE, Plaintiff, Darnell Eubanks, demands all relief from Defendant, Drexel University, recoverable in law and deemed reasonable and just by the Court.

**COUNT SIX**
**Retaliation – Violation of Public Policy**
*Shick v. Shirey,* 716 A.2d 1231 (Pa. 1998)
**Plaintiff v. Defendant**

94. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

95. Under the Supreme Court decision, *Shick v. Shirey,* 716 A.2d 1231 (Pa. 1998), there exists a public policy right for employees to not be retaliated against and/or terminated for having sought and exercised their rights under the Pennsylvania Workers Compensation Act.

96. Plaintiff made a claim for Workers' Compensation on or about February 17, 2022 and began treating with Defendant's panel physicians, who/whom/which placed restrictions on Plaintiff for which Defendant claimed it/they could not return Plaintiff to work.

97. Defendant by and through Mr. Hirsch and Mr. Nayar were dismissive of Plaintiff's injuries, unduly strict and scrutinizing over Plaintiff's treatment and care, and disciplined, suspended, and terminated Plaintiff temporal to his claim for benefits.

98. Defendant intentionally, purposefully, and willfully refused to return Plaintiff to work in a position he was capable of doing under the panel physician's restrictions, as retaliation for having made a claim for Workers Compensation benefits.

99. Defendant then further violated public policy and retaliated against Plaintiff by having suspended and subsequently terminated Plaintiff on March 23, 2022 and April 11, 2022, respectively, due to Plaintiff's inability to return to work due to panel physician restrictions.

100. As a direct and proximate result of Defendant's violation of public policy, Plaintiff has suffered loss of wages, loss of earnings, loss of amenities of employment, pain, suffering, emotional damages, loss of reputation, out-of-pocket expenses, and similar harms; all to Plaintiff's great detriment.

101. Plaintiff seeks all relief recoverable such as punitive damages, attorney fees, and costs.

WHEREFORE, Plaintiff, Darnell Eubanks, demands all relief from Defendant, Drexel University, recoverable in law and deemed reasonable and just by the Court.

DEREK SMITH LAW GROUP, PLLC

*/s/ Christopher J. DelGaizo, Esq.*
CHRISTOPHER J. DELGAIZO, ESQUIRE
Attorney for Plaintiff, Darnell Eubanks
*PA Attorney Number 200594*

1835 Market Street, Suite 2950
Philadelphia, PA 19103
T: 215-391-4790
Fax: 215-501-5911
Email: Chris@dereksmithlaw.com

Date: September 11, 2023